**MEMORIAL REHABILITATION HOSPITAL OF SANTA BARBARA, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

No. 93–55206.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 11, 1995.

Decided Aug. 30, 1995.

---

Stephen M. Rummage, Davis, Wright and Tremaine, Seattle, WA, for plaintiff-appellant.

\* Honorable Donald P. Lay, Senior Circuit Judge

Michael R. Power and Judith A. Waltz, Department of Health and Human Services, San Francisco, CA, for defendant-appellee.

Before: LAY,\* BRUNETTI and RYMER, Circuit Judges.

LAY, Senior Circuit Judge:

Memorial Rehabilitation Hospital of Santa Barbara ("Memorial") challenges the conclusion of the Secretary of Health and Human Services ("the Secretary") that it does not qualify as a "new hospital," exempt from ceilings on hospital rates by regulations enacted under the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), 42 U.S.C. § 1395. The district court granted summary judgment upholding the decision of the Secretary, and this appeal followed. We now affirm.

## BACKGROUND

In 1978, Santa Barbara County ("the County") operated Santa Barbara General Hospital ("the County Hospital"), a 180–bed acute care hospital. During that year, the County stopped operating several of its inpatient services because of reduced revenues resulting from California's Proposition 13. In addition, the County agreed to lease property and equipment associated with the hospital's rehabilitation service to the Memorial Rehabilitation Foundation ("the Foundation"). The next year, the hospital's psychiatric services were relicensed and moved off campus, leaving the 45–bed rehabilitation service as the hospital's only remaining inpatient service. This situation remained unchanged until January 1, 1982, when the County transferred its operation of the rehabilitation services to the Foundation, which then founded the Memorial Rehabilitation Hospital.

To obtain a license under California law and meet Medicare's conditions of participation, Memorial was required to add or upgrade a number of structures and support

for the Eighth Circuit, sitting by designation.

services. These included improvements to the physical plant as well as the acquisition of administrative, recordkeeping, accounting, maintenance, security, and other services and programs. In all, Memorial had $870,000 in capital and other improvement costs during its first three years of operation to meet the various licensing requirements.

In terms of per patient operating costs, which do not include the capital and other outlays just discussed, the general rules of TEFRA provided that the fiscal year ending June 1983 would serve as Memorial's base year for Medicare reimbursement. Under the statute, a hospital's per patient operating costs are measured in the established base year and the reimbursements in subsequent years are limited to the base year's costs plus an adjustment factor. *See* 42 U.S.C. § 1395ww(a), (b). Memorial's operating costs from its base year produced a reimbursement per patient discharge of approximately $11,000 in 1984, while it alleges its actual costs for that year were approximately $13,450 per discharge.

Thus, on July 31, 1985, Memorial applied to Blue Cross of California, its fiscal intermediary, for an exemption from TEFRA's limits on increases in reimbursable hospital costs. Blue Cross determined that Memorial met the criteria for a "new hospital" under 42 C.F.R. § 405.463(f)(1), which provides as follows:

*Exemptions*—(1) New Hospitals. [The Secretary] will exempt new hospitals from the rate of increase ceiling imposed under this section. For the purposes of this section, *a new hospital is a provider of inpatient hospital services that has operated as the type of provider for which it is certified for Medicare participation, under present and previous ownership, for less than 3 full years.* This exemption expires at the end of the first cost reporting period be-

ginning at least 2 years after the hospital accepts its first patient, or the first cost reporting period beginning on or after October 1, 1985, whichever comes first. (Emphasis added).[1] Application of this provision would exempt Memorial from the normal ceilings on hospital rate increases for the year ending in June 1984, and establish as its base year the fiscal year ending in June 1985.

The Secretary rejected Blue Cross's recommendation, however, and denied Memorial "new hospital" status. Thereafter, the Provider Reimbursement Review Board upheld the Secretary's denial of Memorial's claim. It found that Memorial had operated as the type of provider for which it was certified for Medicare for *more* than three years, because the only material change in its status was the change in ownership (from the County to the Foundation) in 1982. The Board relied heavily on the fact that the County Hospital and Memorial were licensed exclusively for the same type of inpatient services from 1979 through 1985 and that they both were certified under Medicare for long-term care rehabilitation since 1981. On November 14, 1991, the Board's decision became the final decision of the Secretary when the Deputy Administrator of Health Care Financing Administration declined to review it.

Memorial brought an action for judicial review in the District Court for the Central District of California, seeking to overturn the agency's decision. Specifically, Memorial claims it is entitled to approximately $206,000 in additional Medicare reimbursement for the cost year ending June 30, 1984.[2] Memorial moved for summary judgment, which the Secretary opposed. The district court denied Memorial's motion, concluding the Secretary's action was not arbitrary and capricious, contrary to the law, unsupported by substantial evidence, or based on a misinterpretation of section 405.463(f)(1). For the

---

**1.** Section 405.463 was subsequently renumbered and now appears without substantive change as section 413.40. Both parties have continued to refer to the regulation as it was numbered and worded during the cost year at issue, rather than the renumbered version.

**2.** Moreover, by acquiring "new hospital" status, Memorial's reimbursement rate would be based on the fiscal year ending in June 1985, which

would dramatically increase its Medicare reimbursements for subsequent years. Memorial contends that utilizing the 1985 base year rather than its first year of operations would allow its reimbursement rate to approach Memorial's actual costs instead of significantly undercompensating it for the services it provides Medicare patients.

same reasons, the court then granted summary judgment in favor of the Secretary. Memorial filed a timely appeal.

## DISCUSSION

### I.

Memorial contends the Secretary's interpretation is contrary to both the wording and purpose of section 405.463(f)(1). Specifically, it argues that the Secretary's interpretation contradicts the clear language of section 405.463(f)(1) because the County Hospital's rehabilitation facility alone was not any "type of provider" certified for Medicare participation. The rehabilitation facility was not a provider because it alone was not a licensed hospital under state law and was dependent on the rest of the hospital for recordkeeping, nursing services, budgeting, and governance.[3] Had the rehabilitation facility been a provider, Memorial argues, it would not have spent a substantial amount of time and money obtaining a license from the state and developing the support services necessary to be a "hospital." In addition, Memorial claims that it suffered the costs and difficulties of a new hospital: it spent $870,000 to create and upgrade the physical facility to obtain a license, yet it took several years to mature and bring its per patient operating costs in line with other hospitals providing the same level of hospital care. It contends the Secretary's determination defies the purpose of the "new hospital" exemption because it was designed to correct for these distortions in costs and compensate providers fairly for the services they render.

◼ We disagree. We afford deference to an agency's construction of its own regulation because its expertise makes it well-suited to interpret the language. *North Clackamas Comm. Hosp. v. Harris,* 664 F.2d 701, 704 (9th Cir.1980) *("North Clackamas"); Pacific*

*Coast Medical Enter. v. Harris,* 633 F.2d 123, 131 (9th Cir.1980) *("Pacific"); cf. Phoenix Baptist Hosp. & Medical Ctr. v. Heckler,* 767 F.2d 1304, 1307 ("We give considerable deference to the Secretary's interpretation of the Medicare scheme."), *modified,* 776 F.2d 877 (9th Cir.1985). We will uphold the interpretation as long as it conforms with the purpose and wording of the regulation and is a reasonable construction of the regulatory language. *See Vallejo Gen. Hosp. v. Bowen,* 851 F.2d 229, 231 (9th Cir.1988); *see also North Clackamas,* 664 F.2d at 704 (quoting *Pacific,* 633 F.2d at 131, and stating that an agency determination will not be set aside unless it is "clearly erroneous or inconsistent with the regulation").

◼ We find the Secretary's construction is reasonable in light of the language of the regulation. We believe it was reasonable for the Secretary to interpret "same type of provider" to mean a provider of the same type of inpatient hospital services. A plain reading of the regulation therefore supports the Secretary's view that because Memorial offered and was certified for identical services—inpatient rehabilitation services for forty-five beds—as its predecessor, it "operated as the same type of provider." Furthermore, section 405.463(f)(1) does not state that ancillary administrative and support departments also must survive a change in ownership in order for the new entity to be the "same type of provider" as the previous one. We decline Memorial's request to impose such a requirement when it is not mandated by the language of the rule. Thus, whether or not Memorial acquired a fully functioning or "freestanding" hospital is immaterial; as long as Memorial provided and was certified for the same type of services as the County Hospital, upon acquiring all that remained of the latter's inpatient services,

---

**3.** *Memorial argues that because the Secretary utilized the term "provider," which is statutorily defined, she is bound by the statutory definition. A "provider" under the Medicare statute is a "hospital, rural primary care hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, [or] hospice." 42 U.S.C. § 1395x(u). Memorial states the parties agree that the earlier rehabilitation facility never operated as one of the last six types*

*of facilities on the list, thus, this case turns on whether the rehabilitation center was a "hospital" before Memorial acquired it. To be a "hospital" under Medicare, Memorial contends a facility must be licensed and meet other specific statutory requirements such as maintaining clinical records on all patients and providing twenty-four hour nursing services. See 42 U.S.C. § 1395x(e).*

Memorial can be deemed, under the language of the regulation, the "same type of provider."

Moreover, we reject Memorial's contention that the Secretary's interpretation necessarily defies the purpose of the regulation. While Memorial did spend a sizeable amount of money upgrading its facility, and its per patient operating costs rose after the 1983 base year, the exemption was not designed to protect any hospital that has extensive improvement costs or increasing operating costs. As the Secretary points out, many older, established hospitals incur high costs in maintaining their licenses and remaining competitive. Likewise, established hospitals may also experience cost increases which cause their actual costs to exceed their Medicare reimbursements. Thus, Memorial's costs alone do not demonstrate that it is an intended beneficiary of the "new hospital" exemption.

Memorial further argues the Secretary's interpretation of her regulation was arbitrary and capricious. It suggests that had the County Hospital simply closed its rehabilitation service until Memorial was licensed, the Secretary would have treated it as a "new provider." In support of this propositions Memorial cites *Sunshine Health Sys., Inc. v. Bowen,* 809 F.2d 1390 (9th Cir.1987) (*"Sunshine"*), in which the Secretary found a hospital to be a "new provider" when it opened fourteen months after the previous hospital had been decertified and closed. Memorial therefore asserts that because it experienced the same cost distortions it would have encountered had the hospital closed its doors temporarily, like the hospital in *Sunshine,* the Secretary's interpretation—and her refusal to classify Memorial as a "new provider"—treats similarly situated parties differently, and is therefore arbitrary.

Again, however, Memorial's arguments are unconvincing. As the Secretary points out, her decision was tailored only to circumstances in which the purported "new hospital" assumes all existing and operating inpatient services of the old hospital. Memorial has cited no case in which the Secretary has used her interpretation of section 405.463(f)(1) to treat a hospital in similar circumstances differently than she treated Memorial. In addition, *Sunshine* is factually distinguishable from this case. The hospital in *Sunshine,* unlike Memorial, assumed ownership of a hospital that had been decertified due to high mortality rates and closed for fourteen months, and therefore incurred increased start-up costs as a result of the closure and the adverse publicity from the previous hospital's troubles. 809 F.2d at 1393. Moreover, in that case, Sunshine did not wish to be classified as a new hospital under the relevant regulation and therefore challenged its "new hospital" status, claiming the Secretary's interpretation was arbitrary and an abuse of discretion. The district court agreed with Sunshine and this Court affirmed, thereby reversing the decision of the Secretary and declaring the hospital was *not* a "new provider." *Id.* at 1394, 1400. Thus, *Sunshine* provides no factual or legal support for Memorial's arguments.

Although we find the Secretary's construction of the regulation valid, we recognize that Memorial's more technical reading offers a plausible alternative interpretation. However, because we are constrained to defer to the Secretary's construction as long as it reasonably conforms to the language and purpose of the statute, we could not embrace Memorial's view, even if we were to conclude that it is the "better" approach. *See, e.g., Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408, 411–12 (7th Cir.1987) (stating that courts leave to an agency the choice between two or more reasonable interpretations because this is a policymaking function which is best left to an administrator and because this ensures that a single, nationwide interpretation prevails). We must therefore uphold the Secretary's interpretation.

## II.

Memorial also contends the Secretary's decision (acting through the Provider Reimbursement Review Board) is unsupported by substantial evidence. Specifically, it argues that there is no support in the record for the Secretary's conclusion that the transaction at issue involved a mere change in ownership. In addition, Memorial insists the record does not support the view that it acquired a free-

standing hospital when it took over the rehabilitation unit from the County Hospital.

 We agree with the district court, however, that there is substantial evidence in the administrative record to support the Secretary's ultimate conclusion that Memorial is not entitled to an exemption as a "new hospital." The Secretary's finding that the transaction "was basically a change of ownership from the County to the Foundation" is supported by the fact that Memorial continued to offer the same type of service for the same number of beds as the County Hospital had and the fact that both entities were licensed and certified under the Medicare Program for long-term rehabilitation services. Thus, the record clearly supports a finding that no material changes in the inpatient services occurred at the hospital from September 1979 through June 1984. Furthermore, as discussed in the previous section, whether the County Hospital's rehabilitation unit constituted a "freestanding hospital" is unimportant; the fact that Memorial acquired the only remaining inpatient unit and continued to provide identical rehabilitation services is sufficient to exempt it from "new hospital" status under the regulation. The Secretary's decision was therefore supported by substantial evidence.

### III.

For the foregoing reasons, the Secretary's interpretation of section 405.463(f)(1) is valid, and her decision to deny an exemption to Memorial under this rule is supported by substantial evidence. The district court's grant of summary judgment in favor of the Secretary is therefore affirmed.

AFFIRMED.